UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

SYLVESTER RAY WILSON                    )
                                        )
          Plaintiff,                    )
                                        )
v.                                      ) Civil Action No.   3:22-CV-305-RGJ
                                        )
HYSTER-YALE GROUP, INC.                 )
                                        )
                                        )
          Defendant.                    )
                                        )
*Serve:*                                )
                                        )
Registered Agent                        )
Corporation Service Company             )
421 West Main Street                    )
Frankfort, Kentucky 40601               )
                                        )
_____ )

## COMPLAINT

\* \* \* \* \* \* \* \* \*

Comes now the Plaintiff, Sylvester Wilson, by counsel, and for his Complaint against the Defendants, states as follows:

### PARTIES, JURISDICTION AND VENUE

1.     At all times relevant to this action, Plaintiff, Sylvester Wilson was a resident of Jefferson County, Kentucky.

2.     At all times relevant to this action, Defendant HYSTER-YALE GROUP, INC., ("HYG") is and was a Delaware business entity, with its principal business office located at 5875 Landerbrook Drive, Suite 300, Cleveland, Ohio 44124, operating as a

duly-licensed foreign corporation authorized to conduct business in the Commonwealth of Kentucky and was distributing products within the Commonwealth of Kentucky.

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because the harms and losses to Wilson described herein occurred in Jefferson County, Kentucky.

4.      Jurisdiction:  This action is brought by the Plaintiff in this District on the basis of diversity jurisdiction.  The Plaintiff is a citizen of Kentucky, and the Defendant is a citizen of Delaware pursuant to 28 U.S.C. § 1332(c)(1).  The Plaintiff's claims consist of common law negligence and products liability claims arising from an industrial accident.  The Plaintiff suffered severe physical injuries as a result of this accident.  Thus, the Plaintiff's damages far exceed $75,000.00.  This Court has original jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(a)(1).

## STATEMENT OF FACTS

5.      During all times relevant hereto, Wilson was employed at the Kroger Supermarket located at 2200 Brownsboro Road, Louisville, Jefferson County, Kentucky 40206.  Wilson had been employed with Kroger for over 33 years when the accident occurred on July 3, 2021.  His job title with Kroger was "Department Manger" and his duty was to oversee ordering and stocking of the meat department of his Kroger store.  One of Wilson's duties was to unload deliveries of meat and other perishable goods off of refrigerated semi-trucks which would back up to the store's loading dock.  To accomplish this task, Kroger provided employees such as Wilson with a machine that was designed, produced, and manufactured by the Defendant, known as the "Hyster-Yale Walkie Pallet

Truck", a hand-controlled forklift-type device used by employees to carry and move heavy loads.  Deeming the "Walkie Pallet Truck" moniker too cumbersome for quick and easy reference, the employees of the Kroger store where Wilson worked instead referred to the device by a simpler nickname:  they called the machine a "power jack."  Accordingly, the Complaint will hereinafter refer to the Hyster-Yale Walkie Pallet Truck model number W45ZHD as "the power jack".

6.      Wilson had been trained by Kroger on the proper operation of the power jack.  To propel the machine forward, the operator is supposed to move the control handle in a forward direction.  To propel the machine in reverse, the operator moves the control handle to the rear.  The power jack is equipped with a "kill switch" mechanism, intended to cause the machine to stop when the operator raises the control handle to an upright vertical position.

7.      On Saturday, July 3, 2021, around 7:00 a.m., Wilson was alone in the loading dock area of the Kroger store using the power jack to unload a truck of filled with meat products.  The loading dock is equipped with an elevator platform that raises the power jack up to the level of the semi-trailer so that the employees can maneuver the power jack into the back of the truck.  The elevator has guard rails on both sides.  Wilson put the power jack on the elevator and drove it into the back of the semi-trailer where he collected a load of meat products onto a pallet which rested on the forks of the power jack.  Once the pallet was full, he maneuvered the pallet jack back out of the trailer onto the elevator.  Wilson brought the power jack to a very slow speed and then to a stop, but then it began to lurch forward towards him very quickly.  Because of the guard rails, Wilson had very little space to maneuver, so he raised the handle of the power jack to vertical

position to stop it.  However, the power jack did not stop, despite the fact that Wilson had raised the control handle to the vertical position.  The space was exceedingly narrow and Wilson could not get out of the way in time.  The power jack continued to move forward relentlessly, crushing Wilson's left foot.  Wilson finally managed to extricate his foot after a few moments, but the damage was done.  Wilson sustained severe injuries as a result of the incident, including a fracture of the second left metatarsal bone and a Lisfranc dislocation.[1]  On August 3, 2021, Wilson underwent surgery under general anesthetic to repair the injuries to his foot.  This surgery was followed by months of physical therapy. As a result of the incident, Wilson has suffered permanent injuries including an impairment of his ability to walk normally.

## COUNT I – PRODUCTS LIABILITY

### Strict Liability and Negligence -- Failure to Warn

8.      Wilson incorporates by reference each of the paragraphs above as if fully set forth herein and further alleges as follows:

9.      The power jack, which is the subject of this action, was designed, manufactured, marketed, sold and distributed by Defendants.

10.      On or about July 3, 2021, Wilson attempted the use of and did use the power jack in a safe manner and was using the power jack in the manner in which it was intended to be used in accordance with the instructions contained within the operator's manual.

---

[1] A Lisfranc dislocation or injury **typically describes a spectrum of injuries involving the tarsometatarsal joints of the foot**. The Lisfranc joint itself is composed of the articulation between the first, second, and third metatarsals bones, and the cuneiform bones.  *See* https://www.ncbi.nlm.nih.gov/books/NBK448147/

11.     The Defendant sold and distributed the power jack in a defective and unreasonably dangerous condition for its intended or expected use, and it posed a risk of serious harm to Wilson and others.   The Defendant knows and knew that once an operator-initiated movement of the machine by touching the control lever, the power jack might fail to stop as intended, even after the operator raised the control handle to the vertical position.   The Defendant knows and knew that when this occurred, their power jacks could cause injuries to consumers.   The Defendant failed to take reasonable steps to prevent such injuries, and failed to issue any warning of the risk of the control handle failure and the resulting potential for uncontrolled movement of the machine.

12.     Due to the Defendant's defective design and/or manufacture, the power jack failed.   Specifically, the power jack continued to move in a forward direction, crushing Wilson's foot, despite the fact that he had raised the control handle to the vertical position, which should have caused the power jack to stop as indicated in the power jack's operator's manual.

13.     The Defendant failed to warn Wilson about the power jack's defective and unreasonably dangerous condition.   The Defendant knew or should have known of the power jack's propensity to fail.   Specifically, the Defendant knew or should have known that the power jack handle brake switch and handle brake switch wiring had a propensity to become damaged after repeated movement causing the braking mechanism of the power jack to fail when the control handle is raised to the vertical position, and further that it contained no redundant safety features to prevent the power jack from continuing to move in an uncontrolled and dangerous fashion if the handle brake switch failed to work as intended.   The Defendant had a duty to warn users of the power jack such as the

Plaintiff of this danger and failed to provide such a warning.  Wilson did not receive any warning or notice from the Defendant that the power jack might fail to brake when the control lever was raised to the vertical position.

14.     As a direct and proximate result of Defendant's failures to warn users of the power jack such as Wilson of the dangers of the power jack's propensity for uncontrolled and unintended movement, and the subsequent failure of the power jack to stop moving when Wilson raised the control handle to vertical on July 3, 2021, Wilson sustained severe injuries to his left foot.

15.     As a direct and proximate result of Defendant's failures and the failure of the power jack handle brake switch mechanism and wiring, Wilson has endured, or will endure in the future, medical expenses, lost wages, physical pain, mental suffering, inconvenience, and increased risk of future injury, and permanent impairment of his power to labor and earn money.

## COUNT II – PRODUCTS LIABILITY

### Strict Liability and Negligence – Defective Design

16.     Wilson incorporates by reference each of the paragraphs above as if fully set forth herein and further alleges as follows:

17.     The power jack was sold to Kroger by the Defendant.  The power jack was in the same or substantially the same condition on July 3, 2021, as it was on the date that it was initially sold by the Defendant.  The Defendant never issued any recall of the power jack.

6

18.     The Defendant, by and through the acts and omissions of their agents, employees and representatives, caused the injuries to the Plaintiff's left foot described in paragraph #7 above in that they:

a.      Negligently designed and caused or allowed to be distributed within the United States, including the Commonwealth of Kentucky, the power jack when it knew, or in the exercise of ordinary and reasonable care, should have known that the power jack's handle brake switch and handle brake switch wiring had the propensity to fail, resulting in uncontrolled movement of the vehicle, creating a risk of users such as Wilson being severely injured if and when the handle brake switch failed;

b.      Negligently designed and caused or allowed to be distributed and placed into the stream of commerce within the United States, including the Commonwealth of Kentucky, the power jack when it knew, or in the exercise of ordinary and reasonable care, should have known that the power jack was dangerous and defective with the propensity for uncontrolled and unintended movement upon failure of the handle brake switch and handle brake switch wiring, causing the types of injuries Plaintiff suffered;

c.      Negligently designed and caused or allowed to be distributed within the United States, including the Commonwealth of Kentucky, the subject power jack when it knew or in the exercise of reasonable care should have known that it was inadequate to withstand its normal and foreseeable use;

d.      Negligently designed and caused or allowed to be entered into the stream of commerce within the United States, including the Commonwealth of Kentucky, the power jack whose lack of proper design put their users at risk for serious injury;

e.      Negligently failed to redesign the power jack after it learned of its propensity to fail;

f.      Negligently misrepresented that the subject power jack could and would withstand the forces of normal use, particularly, when it knew or in the exercise of reasonable care should have known or foreseen that the power jack had the propensity for uncontrolled and unintended movement upon failure of the handle brake switch and handle brake switch wiring, causing the types of injuries Plaintiff suffered;

g.      Negligently failed to undertake proper and appropriate testing to ensure the power jack could withstand normal usage;

h.      Negligently allowed advertisements that the power jack could be safely used, when the product was in fact dangerous and defectively designed;

i.      Designed the power jack with an unsafe and defective handle brake switch and handle brake wiring.  Specifically, the wiring that travels through the handle brake switch to control the power jack braking passes through a pivot point at the base of the control handle.  Due to its location and design, the wiring of the power jack has a propensity to become damaged when the control handle is moved up and down during normal operation.  When the wire becomes damaged it can cause the power jack braking system to fail resulting in uncontrolled movement of the vehicle, which is what happened to Mr. Wilson on July 3, 2021.   A more effective design of the handle brake switch, including its location and how its electrical wiring is installed through the machine would have prevented Wilson's injury.  The Defendants chose the design of the handle brake switch and handle break switch wiring despite the fact that there is an alternative safer

design currently available on the market, which is intended to prevent injuries such as happened in the present case.  For example:

1.     The power jack uses one electronic proximity sensor to detect the position of the control handle.  (When the handle is raised to vertical, a signal is sent to the brakes causing them to immediately engage and stop the vehicle).  This item is described above as the "handle brake switch".  The Crown WP3035-45, a machine which is similar in design, appearance, and function to the power jack uses two limit swtiches to detect the position of the control handle.  This redundant safety feature is a better and safer design.  It ensures that if one limit switch fails, the back-up switch will still engage the brakes.  If the power jack had been designed with redundant handle brake switches, it would have prevented Mr. Wilson's injury on July 3, 2021, because even if one switch failed, the other switch would have engaged the brakes before the machine crushed Wilson's foot.

2.     The "handle brake switch" on the power jack is mounted on the control handle above the pivot joint.  The switch and switch wiring that run through it move up and down and side to side along with the control handle.  Repeated movement of the control handle during normal operation of the machine causes bending and flexing of the wires which have a tendency to damage the wires at or near the pivot point of the handle.  When the wires become damaged, it can disrupt the electrical signal intended to engage the brakes when the control

handle is raised to the vertical position.  This phenomenon caused or contributed to the failure of the power jack when it injured Mr. Wilson on July 3, 2021.  In contrast, two other similar machines currently available on the market utilize a better and safer design. Both the Crown WP3035-45 and the Jungheinrich EJE120 are similar to the power jack in design, appearance, and function.  The Crown and the Jungheinrich have the handle brake switches mounted on the chassis of the vehicle, therefore the switch wires do not move or bend when the handle moves.  This design keeps the wires stationary and renders them less susceptible to damage, thus making a failure of the vehicle braking system far less likely when the control handle is raised to a vertical position.  The handle brake switch location on the Crown and Jungheinrich models is a better and safer design than the power jack. If the power jack had been designed with the handle brake switch mounted on the chassis instead of mounted to the control handle, it would have prevented Mr. Wilson's injury on July 3, 2021, because the handle brake switch wiring would have been less likely to fail when Mr. Wilson raised the control handle to a vertical position to stop the machine.

3.    The handle brake switch wiring on the power jack utilizes a multi-conductor electrical cable that does not have any features which does not have any safeguard protecting it from sustaining abrasion, pinching, or crushing damage.  As described in paragraph #18(i)(2)

above, the power jack brake switch wiring passes through a pivot point in the control handle where it is exposed and bends with handle movement; thus, the wires are prone to damage.  In contrast, two other similar machines currently available on the market utilize a better and safer design.  Both the Crown WP3035-45 and the Jungheinrich EJE120 are similar to the power jack in design, appearance, and function.  The Crown model utilizes a plastic spiral cable wrap to provide protection for the handle brake switch wiring against abrasion, pinching, and crushing damage.  The Jungheinrich model utilizes a plastic loom cable sleeve to provide protection for the handle brake switch wiring against abrasion, pinching, and crushing damage.  These protective safety features make the Crown and Jungheinrich models less prone to a loss of braking control because it is far more difficult for their wiring to become damaged.  If the power jack had been designed with the handle brake switch wiring with a protective safety feature such as a plastic spiral cable wrap or plastic loom cable sleeve, it would have prevented Mr. Wilson's injury on July 3, 2021, because the handle brake switch wiring would have been less likely to fail when Mr. Wilson raised the control handle to a vertical position to stop the machine.

j.      The Defendant had a duty to ensure that the power jack would immediately stop each and every time a user such as Wilson raised the control handle to the vertical position.  The Defendant breached this duty because it failed to take reasonable steps to

correct the design flaws of the power jack and/or to choose a safer design that could have prevented the gruesome injuries that Wilson sustained to his left foot.

k.      As a direct and proximate result of Defendant's defective design of the power jack and its subsequent failure on July 3, 2021, Wilson sustained injuries resulting in a fracture and dislocation of the left foot and other losses.

l.      As a direct and proximate result of Defendant's defective design of the power jack and its subsequent failure on July 3, 2021, Wilson has endured, or will endure in the future, medical expenses, lost wages, physical pain, mental suffering, inconvenience, increased risk of future injury, and permanent impairment of his power to labor and earn money.

**WHEREFORE**, the Plaintiff, Sylvester Wilson, demands:

1.      Judgment against the Defendants, in such an amount to fully and justly compensate Wilson for the harms and losses alleged herein;

2.      For his costs herein expended;

3.      For pre-judgment and post-judgment interest from the date of the injury until paid;

4.      For the right to amend the Complaint to add other claims and parties as the proof allows;

5.      For a trial by jury; and

6.      For all other necessary and proper relief to which he may be entitled.

Respectfully submitted,

**BAHE COOK CANTLEY & NEFZGER PLC**

/s/ *Andrew S. Epstein & William D. Nefzger*
Andrew S. Epstein
William D. Nefzger
Bahe, Cook, Cantley, & Nefzger, PLC
1041 Goss Avenue
Louisville, Kentucky 40217
andrew@bccnlaw.com
will@bccnlaw.com
(502) 587-2002 – Telephone
(502) 587-2006 – Facsimile
*Counsel for Plaintiffs*